# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6070 | **DATE** | 9/29/2004 |
| **CASE TITLE** | Pure Imagination vs. Pure Imagination | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Pure Imagination's motion for summary judgment (R. 18-1) is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 3 0 2004 | 33 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | JKM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | 2004 SEP 29 PM 4:30 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PURE IMAGINATION, INC., )
)
Plaintiff, )
) No. 03 C 6070
v. )
)
PURE IMAGINATION STUDIOS, INC., )
)
Defendant. )

DOCKETED
SEP 3 0 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On August 28, 2003, Plaintiff Pure Imagination, Inc. ("Pure Imagination") filed this suit against Defendant Pure Imagination Studios, Inc. ("Studios") for trade mark infringement and cyberpiracy associated with Studios' use of the trade name "Pure Imagination Studios" and the domain names "www.pureimagination.com" and "www.pureimaginationstudios.com." After conducting discovery, Pure Imagination filed a Motion for Summary Judgment. (R. 18-1.) For the reasons set forth below, Pure Imagination's Motion is granted in part and denied in part.

## BACKGROUND

### I. Factual Background

#### A. The Parties

Pure Imagination provides advertising and web site development services and goods. (R. 1-1, Compl. ¶7.) Pure Imagination was incorporated in Illinois on March 21, 2000 and has its principal place of business in Batavia, Illinois. (R. 25-1, Plaintiff's Rule 56.1 Statement of Material Facts in Supp. of its Mot. For Summ. J. ("Pl.'s 56.1 Stmt.") ¶6; R. 1-1, Compl. ¶7.)

1

33

Studios provides advertising, graphic design, illustration, and web site services and goods. (R. 6-1, Answer ¶19.) Studios was incorporated in Illinois on January 10, 2001 and has an office in Texas. (*Id.* ¶3.)

### B. The Parties' Use of the Mark "pure imagination"

Pure Imagination used the "pure imagination" mark in a publication for a Minnesota magazine on January 3, 1999. (Pl.'s 56.1 Stmt. ¶3.) The parties dispute the scope of Pure Imagination's business. Studios alleges that Pure Imagination's market is primarily local to Batavia, Illinois. (R. 22-2, Defendant's Rule 56.1 Statement of Material Facts in Opp. to Plaintiff's Mot. For Summ. J. ("Def.'s 56.1 Stmt.") ¶7.) On the other hand, Pure Imagination contends that it has a worldwide business because it advertises on the Internet. (R. 18-1, Pl.'s Mem. at 9.)

Studios first used the mark "pure imagination" in interstate commerce on May 18, 2001. (Pl.'s 56.1 Stmt. ¶4.) Studios alleges that in early 2001, it performed a trademark search and found no reference to Pure Imagination. (Def.'s 56.1 Stmt. ¶2.) Studios further alleges that in early 2001 it had no knowledge that Pure Imagination was in business. *Id.* Studios offers services worldwide, including fifteen states and seven countries. (*Id.* ¶7.)

On May 22, 2002, Pure Imagination filed an application for registration of the "pure imagination" mark with the United States Patent & Trademark Office. (Pl.'s 56.1 Stmt. ¶9.) Pure Imagination received its registration certificate No. 2721,452 on June 2, 2003. (*Id.* ¶9.) Prior to Pure Imagination's federal registration application, Studios obtained state trademark registrations for the marks "Pure Imagination Studios" and "pureimagination.com" in Illinois on December 31, 2001. (Def.'s 56.1 Stmt. ¶6.) On April 22, 2002, Studios obtained registration for

2

the mark "Pure Imagination Studios" in Oklahoma. *Id.*

### C. Previous Registration of the "www.pureimagination.com" Domain Name

In early 1998, Scott Hamlin operated a company known as Pure Imagination and in June 1998 registered the domain name "pureimagination.com." (Def's 56.1 Stmt. ¶3.) The principal of Studios, Josh Williams, worked with Mr. Hamlin at this time. *Id.* Mr. Hamlin did not renew the domain name "pureimagination.com," and Michele Trimble subsequently registered the name. (*Id.* ¶4.) Mr. Williams completed a formal transfer of ownership in the domain name in May, 2001, paying $600 to Ms. Trimble for the domain name. (*Id.* ¶4.)

## ANALYSIS

### I. Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court's function is "not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). A genuine issue of material fact exists only if a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

In assessing whether a genuine issue of material fact exists in a case, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and

justifiable inferences in favor of that party. *See id.* at 255. Neither "the mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment. *See Skorup v. Modern Door Corp.* 153 F.3d 512, 514 (7th Cir. 1998).

## II. Trademark Infringement

To prevail in a trademark infringement claim against an accused infringer, the plaintiff must show a protectable trademark and a likelihood of confusion on the part of the public. *Nike, Inc. v. "Just Did It" Enter.*, 6 F.3d 1225, 1227 (7th Cir. 1993). A party shows a protectable trademark by establishing priority of use of the mark as a trademark. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). The registration of a trademark in the United States Patent & Trademark Office establishes constructive use of the trademark nationwide. 15 U.S.C. §1057(b). Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application. 15 U.S.C. §1115(b); *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 104 (7th Cir. 1970). A party can obtain the benefit of a third party's earlier use of a mark but only if the earlier use qualifies as "trademark use," the mark has been used continuously and not abandoned, and the third party assigned the rights in the mark and the goodwill associated with that mark. *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666 (7th Cir. 1982).

The issues in Pure Imagination's Motion related to trademark infringement are: (1)

4

whether Studios obtained trademark rights in the domain name "www.pureimagination.com" through third parties' registration of that domain name and Studios' subsequent purchase of the domain name; (2) if Studios' does not benefit from the third parties' earlier registration of the "www.pureimagination.com" domain name, does Studios have any trademark rights related to its use of the "pure imagination" mark prior to Pure Imagination's federal registration application; and (3) whether a likelihood of confusion exists between Pure Imagination's use of the "pure imagination" mark and Studios' use of the "Pure Imagination Studios," "www.pureimagination.com," and "www.pureimaginationstudios.com" marks.

### A. Studios May Not Rely on the Earlier Third Party Registrations

Studios appears to contend that Mr. Hamlin's registration of the domain name "www.pureimagination.com" in early 1998 prior to Pure Imagination's first use of the "pure imagination" mark in January 1999 gives Studios priority in that mark over Pure Imagination. Pure Imagination responds that Studios cannot benefit from the third parties' earlier domain name registrations, and even if Studios could benefit, Pure Imagination can prove an earlier first use of the "pure imagination" mark in February 1998.[1] In order to "tack" trademark rights to an earlier use of a third party, the party seeking to obtain the benefit of the earlier use must show that the earlier user did not abandon the mark and that the earlier user assigned the mark along with the goodwill of the business (associated with the trademark). 15 U.S.C. §1060; *Money Store*, 689 F.2d at 676.

---

[1]Because this Court finds that no genuine question of fact exists that Studios does not benefit from any earlier trademark rights of third parties Mr. Hamlin or Ms. Trimble, this Court does not reach the issue of whether Pure Imagination's alleged use in February 1998 constitutes a use in commerce under the Lanham Act.

Any attempt by Studios to rely on the earlier third party domain registrations fails as a matter of law for at least two reasons. First, Studios' has not set forth any evidence to show that Mr. Hamlin or Ms. Trimble actually used the "www.pureimagination.com" domain name as a trademark. The law is clear that the mere registration of a domain name does not constitute the use of the domain name as a trademark. *Juno Online Servs., L.P. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 691 (N.D. Ill. 1997) ("The mere 'warehousing' of the domain name is not enough to find that defendant placed the mark on goods or 'used or displayed [the mark] in the sale or advertising of services' as required."); *also see Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) (holding that "registration of a domain name does not itself constitute 'use' for purpose of acquiring trademark priority"). Because there is no evidence of the third parties' use of the domain name as a trademark, there is no genuine dispute that Studios cannot benefit from any earlier trademark priority before its own first use.

Second, even if either Mr. Hamlin or Ms. Trimble did use the domain name as a trademark, Studios offers no evidence, or does it even allege, that either of those third parties assigned the goodwill associated with that trademark to Studios. While this Court recognizes that tangible assets need not be transferred along with a trademark in order for the "good will" to be transferred, *Money Store*, 689 F.2d at 676, none of the evidence set forth by Studios creates any genuine issue about any goodwill associated with the domain name being transferred. *See Pepsico, Inc. v. Grapette Co.*, 416 F.2d 285, 287 (8th Cir. 1969) (holding that assignment of trademark was void because no goodwill associated with the mark was transferred along with the mark). Studios provides several pieces of correspondence between Ms. Trimble and the principal of Studios, Mr. Williams. (R. 22-1, Def.'s Mem. Exs. 1-9). This correspondence, however, at

most indicates that the domain name was sold for $600 and the assignment process took several months. *Id.* Because Studios has not even alleged that it obtained any goodwill along with the domain name rights from Ms. Trimble, as a matter of law, Studios cannot claim as its first trademark use the earlier domain name registrations of either Mr. Hamlin or Ms. Trimble.

### B. There is an Issue of Fact Regarding Whether Studios Has Trademark Rights as a Junior Good Faith User

The Lanham Act provides rights to a junior user of a mark who adopted the mark without knowledge of a registrant's prior use and who used the mark continuously since prior to the registrant's application for federal registration. 15 U.S.C. §1115(b)(5)[2]; *Safeway Stores*, 433 F.2d 99 (holding that defendant's innocent continuous use of the mark prior to plaintiff's registration was a defense to trademark infringement claim for geographic areas where defendant, but not plaintiff, was using the mark prior to plaintiff's federal registration); *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904 (7th Cir. 1968) (stating that defendants who adopted a mark without knowledge of the plaintiff's prior use and that had continuously used the mark from a date prior to plaintiffs' federal registration of the mark are entitled to protection in the area of such earlier remote use). Prior to federal registration, trademark priority is determined by the first use in a market area. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("Under the common law, one must win the race to the marketplace to establish the exclusive right to a market"). A second user who uses the mark in good faith may still use its trademark in areas geographically remote from the market appropriated by the first user. *V & V Food Prods., Inc. v.*

---

[2]Although §1115(b) relates to trademarks that have reached "incontestable" status, §1115(a) makes clear that any of the §1115(b) defenses can be applied to a trademark that is still contestable, such as the "pure imagination" mark here.

7

*Cacique Cheese Co., Inc.*, 683 F. Supp. 662, 666 (N.D. Ill. 1988). While neither party has directly addressed this issue, the facts as viewed in the light most favorable to non-movant Defendant Studios show that a genuine question of fact exists whether Pure Imagination's federal trademark registration is subject to Studios' existing rights in certain geographic areas at the time of such application.

Viewed in the light most favorable to the non-movant, Studios' first use in commerce of the "Pure Imagination Studios" mark was May 1, 2001 and its first use in commerce of the "www.pureimagination.com" mark was April 1, 2001. (R. 22-1, Def. Mem. Ex. 3). Although these first uses occurred after Pure Imagination's first use, they nonetheless took place prior to Pure Imagination's application for federal trademark registration on May 22, 2002. (Pl.'s 56.1 Stmt. ¶9). Studios submits the affidavit of its principal Josh Williams stating that "Defendant's services are offered world-wide, including 15 states and 7 countries." (R. 22-3, Williams' Aff. ¶9). Mr. Williams continues that "Pure Imagination Inc.'s business is primarily local in the Chicagoland area." *Id.* Mr. Williams further states that at the time Studios was incorporated, Studios was not aware of Plaintiff or Plaintiff's use of the "pure imagination" mark. *Id.* ¶ 4. While Pure Imagination disputes some of the facts set forth in Studios' Affidavit of Mr. Williams, this Court cannot weigh credibility issues at the summary judgment stage. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (quoting *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. At 2513-14). A reasonable jury could therefore find that Studios had used in good faith the "pure imagination" mark in areas where Pure Imagination did not yet have trademark rights.

### C. Likelihood of Confusion

In determining whether a likelihood of confusion exists, the Seventh Circuit has

established seven factors to consider: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677-78 (7th Cir. 2001). The likelihood of confusion analysis involves a fact intensive balancing test and no single factor is dispositive. *Id.* at 678.

As this Court has explained, under Local Rule 56.1, a party moving for summary judgment must file a statement of material facts on which it relies in support of its motion. LOCAL RULE 56.1; *see Dugan v. American Brick Paving, Inc.*, No. 02 C 5261, 2004 WL 1459265 (N.D. Ill. June 24, 2004) (noting that failure to comply with Local Rule 56.1 was "a potentially dispositive matter"). Here, although Pure Imagination has provided a Local Rule 56.1 statement, it has failed to set forth in that statement most, if not all, of the facts it is presumably relying on to support its likelihood of confusion analysis. *See Smith Fiberglass Prods, Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir. 1993) (likelihood of confusion is a question of fact).

Analyzing the facts as set forth in Pure Imagination's Memorandum, genuine questions of fact still exist as to likelihood of confusion. Specifically, there are questions of fact related to three of the Seventh Circuit's factors: intent of Defendant to palm off his product as that of another; actual confusion; and area and manner of concurrent use.

First, genuine questions of fact exist whether Studios intended to cause confusion through its use of the "pure imaginations" mark. As discussed, Studios has set forth an affidavit that it was not aware of Pure Imagination or Pure Imagination's use of the "pure imagination" mark at

the time it began to use that mark. (R. 22-3, Williams' Aff. ¶4). There is therefore an issue of fact regarding the intent of Studios to confuse.

Second, a genuine dispute also exists regarding the actual confusion evidence set forth by Pure Imagination. Pure Imagination has provided the affidavits of two Batavia, Illinois residents that attempted to locate Pure Imagination's website by visiting www.pureimagination.com. (R. 18-1, Pl.'s Mem. Ex. O). The customers entered the website, looked around, then became confused and eventually telephoned Pure Imaginations. *Id.* Studios disputes that these affidavits demonstrate actual confusion because "the consumers realized they had the wrong website." (R. 22-1, Def.'s Mem. at 5). Pure Imagination is correct that the affidavits demonstrate initial interest confusion with respect to the "www.pureimagination.com" mark. *Dorr-Oliver, Inc. v. Fluid Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996). As the Seventh Circuit has explained, "the Lanham Act forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's even if confusion as to the source of the goods is dispelled by the time any sales are consumated." *Id.* In other words, even though the consumers realized they were not at the web site of Pure Imagination, the fact that the consumers visited www.pureimagination.com, in the first instance, shows that Studios was benefitting from the goodwill of Pure Imagination. Pure Imagination's initial interest confusion argument as set forth in its Motion, though, only applies to the "www.pureimagination.com" mark and not to the "Pure Imagination Studios" mark. A question of fact exists as to whether the consumers were actually confused when they first saw the "Pure Imagination Studios" mark – after the consumers had arrived at the website. Additionally, because the consumers could possibly view Studios' disclaimer in conjunction with their first exposure to the "Pure Imagination Studios" mark, there

is a genuine dispute whether Studios' disclaimer would mitigate any confusion.

Third, for the area and manner of concurrent use factor, Pure Imagination relies solely on each parties' use of the Internet to advertise their services and goods. While Studios fails to come forward with any facts related to this factor, Pure Imagination's initial analysis is insufficient to show that this factor weighs heavily in favor of Pure Imagination. If the mere fact that two companies both advertised on the Internet meant that they had the same area and manner of using their marks, then this factor would almost always favor confusion. Rather, Pure Imagination needs further factual analysis before this factor can unquestionably weigh in its favor.

The Court notes that while Pure Imagination failed to properly set forth its facts for likelihood of confusion in accordance with Local Rule 56.1, the discussion of those facts in its Memorandum presents a compelling case for likelihood of confusion. The Court recognizes that no one factor is required for a finding of a likelihood of confusion analysis. *See CAE, Inc.*, 267 F.3d at 678 (7th Cir. 2001). Nonetheless, balancing the totality of the circumstances and viewing the facts in the light most favorable to Defendants, issues of fact remain.

### III. Cyberpiracy Claims

The Lanham Act requires that a party have a bad faith intent to profit from the mark in order to be liable for cyberpiracy. 15 U.S.C. §1125(d)(1)(A). As discussed above, a genuine question of fact exists whether Studios was aware of Pure Imagination and the "pure imagination" mark when Studios acquired the domain names in question. Accordingly, summary judgment is denied as to Pure Imagination's claim for cyberpiracy.

## CONCLUSION

Pure Imagination is entitled to judgment as a matter of law that Studios does not have trademark rights in the mark "www.pureimagination.com" based on any registration or use of that domain name prior to Studios' own first use of that mark. There is no genuine issue of material fact that would allow a jury to find that Studios benefits from any prior third party registration of the domain name "www.pureimagination.com." Pure Imagination's Motion for Summary Judgment is hereby granted regarding this claim.

Because genuine questions of material fact exist as to Studios' trademark rights prior to Pure Imagination's federal trademark registration and to the likelihood of confusion analysis, Pure Imagination's Motion for Summary Judgment is denied in part. Pure Imagination's Motion for Summary Judgment is also denied as to the claims for cyberpiracy because genuine issues remain regarding whether Studios' acted with bad faith as required by the Lanham Act.

DATED: September 29, 2004  ENTERED

AMY J. ST. EVE
United States District Court Judge