JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6070 | **DATE** | 11/12/2004 |
| **CASE TITLE** | Pure Imagination vs. Pure Imagination | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. After a bench trial on October 18 and 19, 2004, the Court finds that Pure Imagination Studios' ("Studios") "pure imagination studios" and "pureimagination.com" marks infringe Pure Imagination, Inc.'s ("Pure Imagination") trademark rights under 15 U.S.C. § 1114(1) and § 1125(a). Studios failed to prove its prior user defense under 15 U.S.C. § 1115(b)(5). Studios did not act with bad faith and is not liable for cyberpiracy under 15 U.S.C. § 1125(d). No monetary relief is appropriate. This Court permanently enjoins Studios from using the "pure imagination studios" and "pureimagination.com" marks effective May 13, 2005. Studios has six months from the date of this Order to continue using those marks to direct customers to its new business name. During those six months, Studios must provide a link to Pure Imagination's web site on any web page that uses the "pure imagination studios" or "pureimagination.com" marks.

*Amy J. St. E*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 15 2004 | |
| | Notified counsel by telephone. | date docketed | **38** |
| ✓ | Docketing to mail notices. | GMA | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| TH ✓ | courtroom deputy's Initials | | |

U.S. DISTRICT COURT

2004 NOV 12 PM 5: 14

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PURE IMAGINATION, INC.,            )
                                   )
            Plaintiff,             )
                                   )        No. 03 C 6070
      v.                           )
                                   )
PURE IMAGINATION STUDIOS, INC.,    )
                                   )
            Defendant.             )

DOCKETED

NOV 1 5 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On August 28, 2003, Plaintiff Pure Imagination, Inc. ("Pure Imagination") filed this suit

against Defendant Pure Imagination Studios, Inc. ("Studios") for service mark infringement

under the Lanham Act § 32(a), 15 U.S.C. § 1114(1), cyberpiracy under the Lanham Act § 43(d),

15 U.S.C. § 11125(d), service mark and trade name infringement and false description of origin

under the Lanham Act § 43(a), 15 U.S.C. § 1125(a), and unfair competition under Federal and

Illinois common law and the Illinois Uniform Deceptive Trade Practice Act, 815 I.L.C.S. 510,

associated with Studios' use of the trade name "Pure Imagination Studios" and the domain names

"www.pureimagination.com" and "www.pureimaginationstudios.com." A bench trial took place

on October 18 and 19, 2004.

## BACKGROUND

### I.      Procedural Background

Pure Imagination filed a Motion for Summary Judgment on July 12, 2004. Briefing was

completed and on September 29, 2004 this Court granted partial summary judgment, ruling that

38

Studios does not have priority rights in the mark "www.pureimagination.com" based on any use of that domain name by a third party prior to Studios' own first use of that mark. *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL 2222269 (N.D. Ill. Sep. 30, 2004). The Court also denied summary judgment in part because genuine issues of fact existed regarding likelihood of confusion and Studios' cyberpiracy claim. *Id.*

At the conclusion of the two-day bench trial on October 19, 2004, Studios requested directed findings on the issues of damages, unfair competition, cyberpiracy, and its 15 U.S.C. § 1115(b)(5) defense to the service mark infringement claims. The Court addresses Studios' requests for directed findings in connection with its rulings in this Opinion.

## II. Findings of Fact

### A. The Parties

Pure Imagination is a small advertising and marketing firm that helps businesses improve their marketing efforts by providing advertising, graphic design, illustration, and web site services and goods. Pure Imagination incorporated in Batavia, Illinois on March 21, 2000. Pure Imagination currently has customers in many different states. Len Davis is the principal and owner of Pure Imagination, and one of five full-time employees.

Defendant Studios also provides advertising, graphic design, illustration, and web site services and goods, although now it focuses on icon design. Studios was initially located in Wheaton, Illinois, incorporating there on January 10, 2001. Studios relocated to Texas before the filing of this suit and incorporated there on April 8, 2003. Studios filed an assumed name certificate in Texas on July 14, 2003 to conduct business as Firewheel Design. Josh Williams is the principal and owner of Studios.

## B.     The Parties' Use of the Marks at Issue

Pure Imagination contends that it first used its "pure imagination" mark on February 4, 1998. The parties agree that Pure Imagination used its "pure imagination" mark in commerce at least as early as January 1999 on materials created for *Moose* magazine in Minnesota. This interstate use is evidenced by a January 3, 1999 invoice from Pure Imagination to R. C. Romine Advertising, located in Geneva, Illinois. (Pl. Ex. 3.) The invoice describes the work for R. C. Romine Advertising as "Moose Magazine Pgs. MN '99." *Id.* Pure Imagination applied for federal registration of the "pure imagination" mark on May 22, 2002 and the United States Patent and Trademark Office granted registration on June 2, 2003.

Studios was not aware of Pure Imagination or its use of the "pure imagination" mark when it adopted the "pure imagination studios" name. Indeed, Studios derived the name from the theme song from the movie *Willy Wonka and the Chocolate Factory*. Studios first used the "pure imagination studios" mark on March 6, 2001 and first used that mark in commerce on May 18, 2001. Studios applied for federal registration of the "pure imagination studios" mark on June 13, 2001. After Pure Imagination filed a Notice of Opposition to Studios' application on November 12, 2002, Defendant abandoned its application on July 30, 2003.

Studios also has various state registrations for the "pure imagination studios" mark. Studios registered the mark "pure imagination studios" in Illinois on December 31, 2001 for graphic art and design services. Studios registered the mark "pureimagination.com" in Illinois on April 30, 2002 for graphic design, illustration, corporate identity, and branding. Studios registered the mark "pureimaginationstudios" in Oklahoma on April 22, 2002 for graphic design, illustration, corporate identity, and branding.

3

### C. Acquiring the "www.pureimaginatio.com" Domain Name

Pure Imagination attempted to acquire the "www.pureimagination.com" domain name from the previous owner, Michelle Trimble. After talks fell through, Pure Imagination decided to wait until Ms. Trimble's registration of the domain name expired. Studios' owner, Mr. Williams, also contacted Ms. Trimble, and completed acquiring the domain name from her in May 2001 for $600 consideration.

### D. The Parties' Use of the Internet

Both Pure Imagination and Studios rely heavily on the Internet to both market and conduct their business. While Pure Imagination uses a variety of different marketing methods, it focuses on search engine results that will direct potential customers to its web site, www.pureim.com. Pure Imagination registers key words and creates hundreds of "doorway pages" that serve to funnel prospective customers to Pure Imagination's web site. As Pure Imagination's owner explained, its web site has hundreds of "doorway pages" containing text designed to achieve a priority spot on search engine result lists. For instance, the top of these "doorway pages" may focus on keywords, such as "Chicago" or "web design." Also, Pure Imagination pays fees to various search engines so that www.pureim.com displays as a sponsored listing on those search engines. While some of Pure Imagination's "doorway pages" or paid keywords target Chicago customers, others have no geographic reference, thus targeting a worldwide audience.

Upon arriving at Pure Imagination's web site, www.pureim.com, a customer can learn about Pure Imagination's services and view work samples. Once a customer hires Pure Imagination, it can provide services via the Internet. As Mr. Davis explained, instead of shipping

4

products, Pure Imagination provides services resulting in electronic media that it can be provide to the customer via Pure Imagination's web site on the Internet. Pure Imagination typically has very little face-to-face contact even with Chicago customers. Rather, most communications occur through e-mail, telephone, or by posting work on the web site. Pure Imagination's business, therefore, does not have specific geographic boundaries. Pure Imagination's costs of providing services to a customer are essentially the same, regardless of where the customer is located. The only limitation is that the potential customer must first locate Pure Imagination's web site.

The testimony on Pure Imagination's first use of the "pure imagination" mark on the Internet was vague. While Pure Imagination's expert could only conjecture on Pure Imagination's first use of the Internet in mid-2002, Studios' principle Josh Williams testified that he visited Pure Imagination's web site www.pureim.com in connection with receiving an e-mail from Mr. Davis in June 2001. There is no evidence, however, of when Pure Imagination began using its web site to transact business as described above.

Studios also relies heavily on the Internet to both market and conduct its business. Indeed, Studios has never conducted mass mailings, but rather relies solely on the Internet and word of mouth for marketing. As with Pure Imagination, because Studios uses its web site to conduct business, its customers are not geographically restricted. As Studios' owner, Josh Williams, explained, even when Studios was based in Wheaton, Illinois, it had few, if any, customers in that area. Instead, its first customers were in Oklahoma City, Oklahoma, and in Texas because of Mr. Williams' previous connections to those areas. Studios also currently conducts significant business for California clients due to the number of software companies in

5

that state.

Although it purchased the domain name in May 2001, the record is unclear as to when Studios first began operating its web site at www.pureimagination.com. Studios currently operates a limited purpose web site at www.pureimagination.com to direct customers to its new web site at www.firewheeldesign.com. Studios began doing business under the name "Firewheel Design" in July 2003. Studios business, though, remains listed and referred to in various books that reference its web site as www.pureimagination.com. Because Studios has established this good will with the name "pure imagination" it continues to use the web site www.pureimagination.com as a "redirect." Specifically, the www.pureimaginatin.com web site is a single page that states "Pure Imagination Studios is evolving.... Firewheel Design." It contains a link reading "Click Here to Visit Firewheel Design" directing potential customers to the www.firewheeldesign.com web site. At the bottom of the page there is a disclaimer that reads "Notice: Firewheel Design and this web site are not affiliated with Pure Imagination, Inc. of Batavia, IL." The disclaimer is presented in relatively small, light-gray font. While Studios has continued operating this limited purpose web site at www.pureimagination.com, it has otherwise not used the "pure imagination" mark to market new clients after learning of Pure Imagination's federal registration.

**E.     The Parties Interaction Regarding the "pure imagination" Mark**

Len Davis e-mailed Josh Williams in early June 2001 notifying Mr. Williams that he believed a legal dispute existed as to the parties' rights in the "pure imagination" mark. Although the e-mail indicated that Pure Imagination had a pending federal registration for the mark, it appears this statement merely referenced Mr. Davis' engagement of legal counsel to

6

obtain federal registration. In fact, Pure Imagination had not yet filed a federal registration.

Davis' representation confused Mr. Williams who was unable to find the pending federal

registration to which he believed Mr. Davis was referring. After further correspondence, Mr.

Davis and Mr. Williams met face-to-face in November 2001 in Naperville, Illinois. At that

meeting, the parties discussed Mr. Davis buying Studios' rights to the domain name

www.pureimagination.com. A series of conversations followed but the parties were unable to

reach a resolution. In particular, while Mr. Davis was willing to reimburse Mr. Williams for the

$600 he paid Michelle Trimble for the domain name, Mr. Williams also requested

reimbursement for the time and expenses he devoted to establishing his good will behind that

domain name. Pure Imagination filed this suit on August 28, 2003 after the parties failed to

resolve the issue.

## ANALYSIS

I.     **Service Mark Infringement and Unfair Competition[1] Under the Lanham Act**

Congress passed the Lanham Act in 1946 federalizing the existing common law

protection of trade marks used in interstate commerce. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267

F.3d 660, 672 (7th Cir. 2001) (citing *Peaches Enter. Corp. v. Repertoire Assocs., Inc.*, 62 F.3d

690, 692 (5th Cir. 1995)). The Lanham Act provides a federal cause of action for trademark

owners to protect the good will established in using the mark. *Id.* To prevail in a trademark

---

[1]As is often done, Pure Imagination makes claims under both sections 32 (infringement) and 43(a) (unfair competition) of the Lanham Act. Section 32 protects only registered marks whereas section 43(a) protects against infringement of unregistered and registered marks as well as against other conduct such as false advertising and product disparagement. *Brookfield Comm., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir. 1999). In this case, analysis under each of these sections is identical, requiring ownership of a protectable mark and a likelihood of confusion.

7

infringement claim against an accused infringer, the plaintiff must show: (1) it owns a protectable trademark; and (2) there exists a likelihood of confusion on the part of the public. *Nike, Inc. v. "Just Did It" Enter.*, 6 F.3d 1225, 1227 (7th Cir. 1993). A party shows a protectable trademark by establishing priority of use of the mark as a trademark. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). The registration of a trademark in the United States Patent & Trademark Office establishes constructive use of the trademark nationwide. 15 U.S.C. §1057(b). Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application. 15 U.S.C. §1115(b); *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 104 (7th Cir. 1970).

### A. The Parties' Marks in Question are "Service Marks"

Although the parties often use the term "trademark," this term is used in "a broad and generic sense to denote the entire field of trademarks, service marks, trade names, and trade dress." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 n.1 (7th Cir. 1998). The Lanham Act provides that a "service mark" is "any word, name, symbol, or device, or any combination thereof [] used by a person [] to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown. []" 15 U.S.C. § 1127. In this case the "pure imagination" mark and Studios' derivations of that mark are used as "service marks."

### B. The "pure imagination" Mark is a Protectable Trademark

As a federally registered mark, Pure Imagination's "pure imagination" mark is presumed

8

valid and protectable. 15 U.S.C. § 1057( b), 1115(a). Studios did not offer any argument or evidence at trial to rebut the presumption that the "pure imagination" mark is valid and protectable. Even absent federal registration, a mark is protectable if it is either inherently distinctive or has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S. Ct. 2753, 2758, 120 L. Ed. 2d 615 (1992); 15 U.S.C. § 1052(e) and (f). Marks are classified into five categories based on distinctiveness: 1) generic, 2) descriptive, 3) suggestive, 4) arbitrary, and 5) fanciful. *Mil-Mar Shoes Co., Inc. v. Shonac Corp.,* 75 F.3d 1153, 1157 (7th Cir. 1996) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767-68, 112 S. Ct. 2753, 2757, 120 L. Ed. 2d 615 (1992)). The level of trademark protection corresponds with the distinctiveness of the mark. *Id.* Generic terms are not distinctive and therefore are not protectable as trademarks. *Id.* A descriptive mark requires proof of acquired secondary meaning in order to be distinctive and therefore protectable. *Two Pesos,* 505 U.S. at 772, 112 S. Ct. at 2759. Suggestive, arbitrary, and fanciful marks, however, are inherently distinctive and do not require any proof of secondary meaning. Because the phrase "pure imagination" is not generic or descriptive of the services provided by Pure Imagination, it is at least a suggestive mark and therefore inherently distinct. *See Platinum Home Mortg.,* 149 F.3d at 727 ("terms that are either suggestive, arbitrary, or fanciful are automatically entitled to trademark protection because they are inherently distinctive").

### C. Pure Imagination is the Owner and Senior User of the "pure imagination" Mark

Federal registration is prima facie evidence of the registrant's ownership of the mark. 15 U.S.C. § 1057(b). Service mark ownership is determined by the first to use the mark in

commerce. Federal registration of a mark constitutes constructive nationwide use of the mark

from the date of the application for registration. *Allard Enter., Inc. v. Advanced Programming

Resources, Inc.,* 146 F.3d 350, 358 (6th Cir. 1998); 15 U.S.C. 1057(b), (c), 1115(a). In the

absence of, or prior to, federal registration, ownership is "established as of the first actual use of

a mark in a genuine commercial transaction." *Id.* The Lanham Act defines "use in commerce" as

bona fide use of a mark in the ordinary course of trade," and further explains that a service mark

is in use "when it is used or displayed in the sale or advertising of services and the services are

rendered in commerce." 15 U.S.C. §1127. "'[C]ommerce' means all commerce which may

lawfully be regulated by Congress." *Id.*

Here, the parties agree that Pure Imagination used the "pure imagination" mark in

commerce in early January 1999.[2] The earliest use in commerce alleged by Studios of either the

---

[2]Studios admitted this fact in both the Pretrial Order and in its Response to Plaintiff's Statement of Material Facts at the summary judgment stage. (R. 29-1; Def.'s Resp. to Pl.'s Statement Mat. Facts, Fact No. 3; Suppl. to Final Pretrial Order, Fact No. 2.) Despite this binding admission, Studios at trial attacked the January 1999 invoice as not demonstrating any use of the "pure imagination" mark outside of Illinois. Absent leave of Court, however, Studios is precluded from challenging whether Pure Imagination's January 1999 use of the "pure imagination" mark was a use in commerce under the Lanham Act. *Sphere Drake Ins. Ltd. v. All American Life Ins.,* No. 01-C-5226, 2004 WL 442640, *7 (N.D. Ill. Mar. 8, 2004) (quoting *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.")); *Moberg v. City of West Chicago,* 00-C-2504, 2003 WL 255229, * 3 n.3 (N.D. Ill. Feb. 4, 2003) (party's agreement in pretrial order to proposed uncontested fact constitutes binding judicial admission); *see also Vaughn v. King,* 167 F.3d 347, 352 (7th Cir. 1999) ("Pretrial orders supersede the pleadings"). To the extent Studios asserts that Pure Imagination's January 1999 invoice does not evidence use of the mark outside of Illinois, the Court interprets this argument as relating to the territorial scope of Pure Imagination's trademark rights prior to its application for federal registration – a distinct inquiry from whether the mark was used in commerce.

The Court also notes that even if Studios was permitted to challenge Pure Imagination's January 1999 use and proved that Studios was the senior user of the "pure imagination" mark, the result in this case would remain unchanged. Studios does not seek to cancel Pure Imagination's

"pure imagination studios" or "pureimagination.com" marks is May 18, 2001. Therefore, as between, Pure Imagination and Studios, based on its priority of service mark use, Pure Imagination is the senior user and Studios is the junior user. As of its application for federal registration of the "pure imagination" mark on May 22, 2002, Pure Imagination had constructive nation-wide use of the "pure imagination" mark. The burden is therefore on Studios to prove any rights in the "pure imagination" mark to which Pure Imagination's federal registration was subject.

### D. Likelihood of Confusion

Likelihood of confusion is a question of fact. *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1428 (7ᵗʰ Cir. 1985). The Seventh Circuit weighs seven factors in determining whether a likelihood of confusion exists: (1) similarity of the marks; (2) similarity of the products or services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to "palm off" his product as that of the plaintiff. *CAE Inc.,* 267 F.3d at 677-78. The likelihood of confusion test is an equitable balancing test and no single factor is dispositive. *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1044 (7ᵗʰ Cir.

_____

federal registration, which entitles it to nationwide constructive use as of its application in May 2002. Therefore, even if Studios was the senior user of the mark, Pure Imagination would have nationwide rights to the "pure imagination" mark, subject only to the markets for which Studios could prove its prior and continuous use. As discussed in Section E of this Analysis, Studios fails to meet its burden of proving such prior and continuous use, even as a senior user. *See Allard,* 146 F.3d at 361 (holding that even as the senior user, defendant's "rights to its mark extend only as far as the area where its continuous prior use of that mark preempted plaintiff's constructive use of its mark").

11

2000). At the summary judgment stage, Studios argued only three of these factors: area and manner of concurrent use, actual confusion, and intent. Studios made no additional arguments at trial. Nonetheless, the Court addresses each of the seven factors and finds that a likelihood of confusion exists.

### 1.    Similarity of the Marks

The first factor in the Seventh Circuit's likelihood of confusion analysis is the similarity of the plaintiff's and defendant's marks. The Court finds that Pure Imagination's "pure imagination" mark and Studios' "pure imagination studios" and "pureimagination.com" marks are virtually identical. Regarding "pureimagination.com," as Pure Imagination correctly points out, the presence of the second-level domain ".com" does not itself distinguish an otherwise similar mark. *Brookfield Comm., Inc. v. West Coast Ent., Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (finding that the similarity factor weighed heavily in favor of plaintiff in analyzing "MovieBuff" and "moviebuff.com" marks). Regarding "pure imagination studios," courts typically ignore a generic portion of a mark, focusing instead on the modifying portion. *See Bishops Bay Founders Group, Inc. v. Bishop Bay Apartments, LLC*, 301 F. Supp. 2d 901, 912 (W.D. Wis. 2003). In the context of web design, advertising, and graphic design and illustration services, the term "studios" is either generic or descriptive. Therefore, the term "studios" in the "pure imagination studios" mark bears little importance in distinguishing the mark from "pure imagination" and those marks are essentially identical. Because the relevant portions of "pure imagination studios" and "pureimagination.com" marks are essentially identical to plaintiff's "pure imagination" mark, the similarity of marks factor weighs heavily in Pure Imagination's favor.

12

## 2.     Similarity of Services

The second factor is the similarity of the services associated with the marks. Both Pure Imagination and Studios provide advertising, graphic design, illustration, and web site services and goods. Josh Williams testified that Studios is world reknown for its icon design services and in fact won the Pixelpalooza award for its icon design in 2002. Studios does not deny, however, that it also offers web site services, advertising, and graphic design services, just like Pure Imagination. Indeed, Studios' Illinois state registration for "pure imagination studios" states that the mark is for "graphic art and design services." (Def. Ex. 2.) Studios' Illinois registration for "pureimagination.com" states that the mark is for graphic design, illustration, corporate identity, and branding." (Def. Ex. 3.) Studios' Oklahoma registration for "pureimaginationstudios" states that it is for "graphic design, illustration, corporate identity & branding." (Def. Ex. 4.) Moreover, Studios' current web site, accessed via www.pureimagination.com, lists Studios' services as identity design, icon design, illustration, and web design. The record, therefore, plainly shows that there is at least significant overlap, if not essential identity, between the services offered by Pure Imagination and Studios under the service mark "pure imagination," including Studios' "pure imagination studios" and "pureimagination.com" marks.

Studios argued at trial that the parties are not in direct competition and, therefore, there is no likelihood of confusion. This factor, however, does not examine whether direct competition actually exists, but whether the parties provide services so related that the public could reasonably think that the same party offers the services. *See CAE, Inc.,* 267 F.3d at 679 (finding that similarity of products factor weighed in plaintiff's favor even though many of the parties' products were dissimilar); *Forum Corp. of N. Am. V. Forum, Ltd.,* 903 F.2d 434, 442 (7th Cir.

13

1990) (noting that lack of "direct competition" was not dispositive of issue of likelihood of confusion); *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988) (finding likelihood of confusion even when the products were not identical but were sufficiently related to create an inference in consumers' minds that the products came from the same source). Therefore, because there is at least a significant overlap in the parties' services offered under the mark "pure imagination," the public could think that the same party offers the services. This factor thus weighs heavily in favor of Pure Imagination. *See CAE, Inc.*, 267 F.3d at 679.

### 3. Area and Manner of Concurrent Use

The third factor is the area and manner of concurrent use of the "pure imagination" mark. Under this factor, the Court must assess whether "there is a relationship in use, promotion, distribution, or sales between the good or services of the parties." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 900 (7th Cir. 2001). Many courts have ruled in analyzing a factor similar to the Seventh Circuit's "area and manner of concurrent use" factor, that the parties' use of the marks in question in the domain name of a web site is dispositive of this factor favoring the trademark owner. *See Public Service Co. of New Mexico v. Nexus Energy Software, Inc.*, 36 F. Supp. 2d 436, 439 (D. Mass. 1999) (finding that "channels of trade" factor favored trademark owner because both parties compete on the Internet, even though there were differences in geographic regions served); *Washington Speakers Bureau, Inc. v. Leading Auth., Inc.*, 33 F. Supp. 2d 488, 499 (E.D. Va. 1999) (finding that "similarity of facilities used in business" factor favors trademark owner because both parties used the Internet as a facility through which services were advertised and provided); *Jews for Jesus v. Brodsky*, 993 F. Supp 282, 304-5 (D.N.J. 1998)

(finding that "manner in which marketed" factor favored trademark owner because both parties used the mark in their domain names that could be accessed from any Internet browser); *Interstellar Starship Services, Ltd. v. Epix, Inc.,* 983 F. Supp. 1331, 1336 (D. Or. 1997) (finding that "marketing channels" factor favored trademark owner because both parties marketed themselves through the Internet) (reversed on other grounds); *Planned Parenthood Fed. of Am., Inc. v. Bucci,* No. 97 Civ. 0629, 1997 WL 13313,*8 (S.D. N.Y. March 24, 1997) (finding that "the competitive proximity of the products or services" factor favored trademark owner because the web sites are located on the World Wide Web and "compete for the same audience – namely, Internet users who are searching for a web site that uses plaintiff's mark as its address"). While the Court declines to hold that the mere use of the Internet by both parties means that this factor weighs in favor of the trademark owner, under the facts of this case where both parties actively use the Internet to perform their services, this factor weighs heavily in favor of Pure Imagination.

Further, in analyzing this factor, courts have noted the importance of several "sub-factors:" (1) the relative geographical distribution areas; (2) the existence of direct competition between the products; (3) whether the products are sold to consumers in the same type of store, and (4) whether the product is sold in the same marketing channels. *Id.* (internal citations omitted). Regarding the first sub-factor, the parties have the same relative geographic distribution areas. Because the parties both rely on the Internet to conduct their business as well as their marketing, they both have a worldwide distribution area. Len Davis testified that Pure Imagination's customers can be located anywhere in the world because business is conducted over the Internet. In particular, Pure Imagination can post draft designs on its web site, Pure Imagination's customers can view and comment on them, and then Pure Imagination can revise

15

and re-post them. Similarly, Josh Williams testified that Studios conducts business in a similar manner and that because of the Internet, its customers can come from anywhere in the world. Indeed, this use of the Internet has resulted in an actual overlap in the geographical location of customers. Defendants' Exhibit 9 shows that Studios has at least one customer located in Chicago, Illinois, which is the primary base of Pure Imagination's business. (Def. Ex. 9.) Regarding the second sub-factor, the parties have not presented any evidence of mutual customers or Studios' soliciting Pure Imagination's customers. On the other hand, as discussed above with respect to the "similarity of services" factor, an overlap exists between the offered services of the parties. Regarding the third sub-factor, because both Pure Imagination and Studios do not simply market their services over the Internet, but actually render those services on the Internet, the services are offered in the same type of "store" and this sub-factor favors Pure Imagination. Regarding the fourth subfactor, because the parties' services are marketed over the Internet on web sites that use, or try to use, the "pure imagination" mark in the domain name, they share the same marketing channels. *See Washington Speakers,* 33 F. Supp. 2d at 499 ("To facilitate access to their web sites, individuals and companies typically prefer to have a domain name that is memorable and that may even be surmised by users who do not know their exact web site address"); *Jews for Jesus,* 993 F. Supp. at 304-5 (finding that "manner in which marketed" factor favored trademark owner because both parties used mark in question as a domain name). Even absent evidence of direct competition, because three of the four sub-factors favor Pure Imagination, the Court finds that the "area and manner of concurrent use" factor favors Pure Imagination.

16

### 4. Degree of Care Likely to be Exercised by Customers

The fourth factor is the degree of care likely to be exercised by consumers of the services sold by the parties under the "pure imagination" mark. Courts have recognized that when a product or service is sold over the Internet the consuming public consists of a broad range of purchasers. *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001); *Intermatic Inc. v. Toeppen,* 947 F. Supp. 1227, 1235-36 (N.D. Ill. 1996). Here, both parties offer web design services over the Internet. Because of the wide-spread use of web sites and therefore the need for web design services by companies of all sizes and levels of sophistication, each party has at least some potential customers of relatively low-levels of sophistication. As here, where the parties have a broad range of customers, the "standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC,* 142 F. Supp. 2d at 1043 (citing *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 293 (3ᵈ Cir. 1991)). Because the standard of care to be exercised by the parties' consumers is that of a relatively low level of sophistication, confusion is more likely and this factor favors Pure Imagination.

### 5. Strength of Plaintiff's Mark

The fifth factor is the strength of Pure Imagination's mark, which refers to "the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *See CAE, Inc.,* 267 F.3d at 685. A mark's strength is of little importance when the marks are essentially identical. *Sand, Taylor & Wood Co.,* 978 F.2d at 959 (quoting 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 11:24, at 505-6 (1991 Supp.)). Even if given little weight, this factor also weighs slightly in favor of Pure Imagination.

Pure Imagination has a federally registered mark that is presumed valid. 15 U.S.C. § 1115(a). Even without federal registration, the "pure imagination" mark is at least suggestive and therefore inherently distinctive. *Mil-Mar Shoe Co.,* 75 F.3d at 1156. Therefore, although Pure Imagination has not provided significant other evidence of its mark's strength, its federal registration, and the inherent distinctiveness of the mark, mean that the "strength of the mark" factor slightly favors Pure Imagination.

### 6.    Actual Confusion

The sixth factor is whether there is any evidence of actual confusion. Because the ultimate question is whether there is "likelihood" of confusion, evidence of actual confusion is not required for a finding of likelihood of confusion. *Int'l Kennel Club of Chicago, Inc.,* 846 F.2d at 1090. When such evidence does exist, however, it "is entitled to substantial weight." *Id.* Pure Imagination has presented testimony from a funeral home director in Batavia, Illinois. This witness knew of Pure Imagination's services and attempted to locate its web site on the Internet. The witness entered "www.pureimagination.com," assuming that the company's name would be the domain name.[3] The witness entered and spent several minutes at the www.pureimagination.com web site. Later that day, the witness telephoned Mr. Davis, and when he mentioned that he had been on www.pureimagination.com, Mr. Davis informed him that this was not Pure Imagination's web site. At the summary judgment stage, Pure Imagination also provided an affidavit of another witness who had a similar experience — entering www.pureimagination.com as a domain name assuming to find Pure Imagination's web site.

---

[3]Courts have recognized that this is typical behavior for Internet users. *See Brookfield,* 174 F.3d at 1044-45 ("Web users often assume, as a rule of thumb, that the domain name of a particular company will be the company name followed by '.com'").

Further, Mr. Davis testified at trial that he has experienced numerous other instances of customers being confused about the location of Pure Imagination's web site because of Studios' using the domain name www.pureimagination.com.

Studios attacks this evidence by arguing that all of these customers eventually figured out that www.pureimagination.com was not the web site of Pure Imagination. Studios also argues that any of these customers could have performed a search on a search engine that would have likely yielded Pure Imagination's priority listings linking directly to Pure Imagination's web site at www.pureim.com. Pure Imagination is correct, however, that its evidence demonstrates initial interest confusion with respect to the "www.pureimagination.com" mark. *Dorr-Oliver, Inc. v. Fluid Quip, Inc.,* 94 F.3d 376, 382 (7th Cir. 1996). As the Seventh Circuit has explained, "the Lanham Act forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's even if confusion as to the *source of the* goods is dispelled by the time any sales are consumated." *Id.* The Ninth Circuit offered a hypothetical explanation similar to the following. Imagine if McDonalds puts up a sign at Exit 7 saying "Burger King – Exit 7," but in reality Burger King is located at Exit 8. If there is, however, a McDonalds at Exit 7, McDonalds can benefit from the good will of Burger King because cars that exit the freeway at Exit 7 and do not see the Burger King may simply pull into the McDonalds rather than get back on the freeway. Even though the consumer is fully aware the McDonalds is not a Burger King, the initial confusion of where to exit the freeway allowed McDonalds to improperly reap the good will of its competitor. *See Brookfield,* 174 F.3d at 1064. Such is the case here, where even though the consumers eventually realized they were not at the web site of Pure Imagination, the fact that the consumers visited www.pureimagination.com in

the first instance shows that Studios benefitted from the goodwill of Pure Imagination.

Further, the testimony of Pure Imagination's witness also evidences actual confusion with respect to the "pure imagination studios" mark. The witness made clear that even after several minutes on the www.pureimagination.com web site, he still believed the web site was affiliated with Pure Imagination. It was not until later speaking with Len Davis that he realized he had been mistaken. Plaintiff's Exhibit 14, a printout of the www.pureimagination.com web site shows that the web site twice identifies Pure Imagination Studios as the sponsor of the web site. (Pl. Ex. 14.) Therefore, even after seeing the mark "pure imagination studios," the witness still assumed he was on Pure Imagination's web site. This evidence of actual confusion with respect to both the "pureimagination.com" and "pure imagination studios" is entitled to great weight and heavily favors Pure Imagination.

### 7.    Defendant's Intent

The seventh factor is whether Studios intentionally passed off its services as those of Pure Imagination. This factor is only relevant if the defendant intended to "palm off" his products as those of another. *See Sands, Taylor & Wood Co.,* 978 F.2d at 961; *also see Wesley-Jessen Div. Of Schering Corp. v. Bausch & Lomb Inc.,* 698 F.2d 862, 867 (7th Cir. 1983) (intent is not necessary for a finding of likelihood of confusion). This factor concerns intent to confuse consumers, "not merely the intent to use a mark that is already in use somewhere else." *Am. Society of Plumbing Eng'rs v. TMB Pub., Inc.,* Nos. 02-3632, 02-3765, 2004 WL 1799362, *9 (7th Cir. Aug. 3, 2004). Pure Imagination presents no direct evidence that Studios was aware of Pure Imagination's mark when Studios adopted its own marks. Rather, Pure Imagination points to various conduct of Studios after it became aware of Pure Imagination in June 2001. In

20

particular, Pure Imagination points to numerous occasions, where shortly after Pure Imagination took steps to enforce its trademark rights against Studios, Studios then immediately took steps to expand its use of the "pure imagination" mark. After Len Davis e-mailed Josh Williams in early June 2001, Studios responded by applying for its own federal trademark registration. After Pure Imagination sent another written demand in August 2001, Studios responded by obtaining state registrations and renewing its domain name. Later, after Pure Imagination obtained its federal registration, Studios nonetheless continued using www.pureimagination.com.

Josh Williams, however, explains that after being contacted by Mr. Davis and Mr. Davis claiming that Pure Imagination had a pending federal registration, Mr. Williams searched the United States Patent & Trademark Office's web site and found no such pending registration. He was, therefore, doubtful of Pure Imagination's rights in the "pure imagination" mark. Further, he knew that he had used the mark himself and had purchased the domain name from a third party. After consulting with his own legal counsel, he genuinely felt that Studios had rights in the "pure imagination" mark and corresponding domain name. Mr. Williams also explained that publications exist that reference Studios' accomplishments in the field of icon design and list its web site as www.pureimagination.com. Studios has continued using that domain name so that customers can find Studios' new web site at www.firewheeldesign.com. The Court finds Mr. Williams testimony entirely credible on the issue of good faith and finds no evidence that Studios has intentionally acted to pass off its services as those of plaintiff Pure Imagination. Therefore, this factor weighs in favor of Studios.

## 8. Weighing the Factors

Since every factor, other than intent to "palm off," weighs in favor of Pure Imagination, the Court finds that on balance of the equities there does exist a likelihood of confusion for both the "pure imagination studios" and "pureimagination.com" marks. The "similarity of the marks" and "evidence of actual confusion" factors, in particular, weigh heavily in favor of Pure Imagination. *CAE, Inc.*, 267 F.3d at 686-87 (the similarity of marks, evidence of actual confusion, and defendant's intent are three most important factors, although all three of these factors must not weigh in plaintiff's favor to find a likelihood of confusion).

## E. Studios' Defense Under 15 U.S.C. § 1115(b)(5)

The Lanham Act provides rights to a user of a mark who adopted the mark without knowledge of a registrant's prior use and who used the mark continuously since prior to the registrant's application for federal registration.[4] 15 U.S.C. §1115(b)(5)[5]; *Safeway Stores*, 433 F.2d 99 (holding that defendant's innocent continuous use of the mark prior to plaintiff's registration was a defense to trademark infringement claim for geographic areas where defendant, but not plaintiff, was using the mark prior to plaintiff's federal registration); *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904 (7th Cir. 1968) (stating that defendants who adopted a mark without knowledge of the plaintiff's prior use and that had continuously used the mark from a date prior to plaintiffs' federal registration of the mark are entitled to protection in the area of

---

[4]The date of application for federal registration is the date of constructive nation-wide use of the registered mark. 15 U.S.C. §1057(c).

[5]Although §1115(b) relates to trademarks that have reached "incontestable" status, §1115(a) makes clear that any of the §1115(b) defenses can be applied to a trademark that is still contestable, such as the "pure imagination" mark here.

such earlier remote use). Prior to federal registration, trademark priority is determined by the first use in a market area. *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 503 (7th Cir. 1992) ("Under the common law, one must win the race to the marketplace to establish the exclusive right to a market"). A second user who uses the mark in good faith may still use its trademark in areas geographically remote from the market appropriated by the first user. *V & V Food Prods., Inc. v. Cacique Cheese Co., Inc.,* 683 F. Supp. 662, 666 (N.D. Ill. 1988).

At trial, Studios argued that Pure Imagination bears the burden of proving that it was first to use the "pure imagination" mark in each geographic market. This is incorrect. As the Supreme Court discussed in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* the Lanham Act provided for constructive notice of registration and thereby modified "the common-law rule that allowed acquisition of concurrent rights by users in distinct geographic areas if the subsequent user adopted the mark without knowledge of prior use." 469 U.S. 189, 200, 105 S.Ct. 658, 664, 83 L.Ed. 2d 582 (1985). In other words, when a party has a federally registered trademark, it is entitled to constructive nationwide use as of registration and a presumptively valid and protectable mark. The determination of rights as between two users of the same mark, when one has a federally registered mark, is not the simple question of which party comes forward with evidence to demonstrate that it was the first user in each market in question. Rather, the party without the federal registration must prove its prior and continuous rights in a market that preempts the registrant's constructive nationwide rights. 15 U.S.C. § 1115(b)(5); *Allard,* 146 F.3d at 361. Therefore, because Pure Imagination has established that it has a federally registered trademark, Studios bears the burden of proving each of the elements of its §1115(b)(5) affirmative defense. *See Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.,* 332 F.3d

264, 272 (4th Cir. 2003) (noting that the good faith junior user defense is an affirmative defense under the Lanham Act); *Quill Corp. v. LeBlanc,* 654 F. Supp. 380 (D.N.H. 1987) (noting that defendant bears the burden of proving its prior adoption without knowledge of the senior user's prior use, the continuous use in that market from date prior to senior user's registration, and the boundaries of that market); *West Disinfecting Co. v. Onorato,* 242 F.2d 197 (C.C.P.A. 1957) (holding that in context of a trademark interference proceeding, the junior user had the burden to prove its use in a market prior to the senior user's use in that market). Specifically, Studios must prove that: (1) it adopted the mark without actual knowledge of Pure Imagination's prior use; (2) it has continuously used the mark; (3) it adopted the mark prior to Pure Imagination's application for federal registration in May 2002; and (4) it uses the mark in the area for which prior continuous use has been proved. 15 U.S.C. § 1115(b)(5); *Concord Labs., Inc., v. Concord Med. Center,* 552 F.Supp. 549 (N.D. Ill. 1982); *Quill Corp.,* 645 F. Supp. at 385 ("At the point in time of registration, the junior user's current market – it's area [of] continuous prior use," [] is frozen, and "[a]s at common law, the junior user's reputation, advertising, and sales delimit its frozen area.") (citing *Thrifty Rent-A-Car Sys. v. Thrift Cars, Inc.,* 639 F. Supp. 750, 755-56 (D. Mass. 1986)).

Because Pure Imagination applied for its federal registration on May 22, 2002, Studios' market for using the marks in question froze as of this date (assuming it proves the requisite elements). *See* 15 U.S.C. § 1057(c) ("Contingent on the registration of a mark on the principal register [], the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect.") Only if Studios proves each element of its section 1115(b)(5) defense, it is entitled to protection throughout the area of its

prior continuous use, but it cannot expand beyond that area. *Concord Labs.,* 552 F.Supp. at 552.

Here, Studios has failed to meet its burden of proving each of the elements of its §1115(b)(5) defense. In particular, Studios has not proven the specific markets in which it contends it has priority rights, the first dates of its use in those markets that are prior to Pure Imagination's first use in those markets, and whether it has continuously used its marks in those markets from a date prior to Pure Imagination's constructive nationwide use on May 22, 2002. While Studios has offered general testimony that its first customers were located around Oklahoma City, Oklahoma and in Texas, it has not even attempted to provide any boundaries to the markets in which it alleges priority. *See Quill Corp.,* 654 F. Supp. 380, 385 (party asserting good faith prior user defense must set forth the geographic extent of its prior customer base). Courts, including in the Seventh Circuit, do not automatically define a market by state borders. *Burger King of Fla., Inc. v. Hoots,* 403 F.2d 904, 906 (7th Cir. 1968) (finding that innocent use in Mattoon, Illinois along with an Illinois registration did not give the party priority rights in all of Illinois, but only in market where mark was actually used). Because Pure Imagination has constructive nationwide use, Studios had the burden of establishing with some specificity that market within which it had priority rights.

Studios also failed to set forth the specific timing of its alleged penetration in markets remote from Pure Imagination's trademark use. Studios merely offered the testimony of Josh Williams that some of its first customers were around Oklahoma City, Oklahoma and in Texas when it first began business. Without any specific evidence of when Studios used the marks in

question in these markets, it cannot establish priority in these markets.[6] Also, while the Court recognizes that the operation of an active web site on the Internet could constitute nationwide trademark use, the record is not clear either as to which party first used the "pure imagination" mark on the Internet. While the evidence shows that Studios had acquired the rights in the "pureimagination.com" domain name by May 2001, the mere registration of a domain name does not count as trademark use. *Brookfield Comm.*, 174 F.3d at 1051. Moreover, while Josh Williams testified that Studios began operating its web site shortly after it acquired the domain name, he also testified that in mid-2001 he visited Pure Imagination's web site at www.pureim.com. Therefore, even from Studios' own testimony it is unclear which party first used the "pure imagination" mark on the Internet.[7]

Studios has failed to offer any specificity as to its activity in any markets in which it alleges priority rights. Courts have declined to find market penetration when a party cannot

---

[6]Pure Imagination argued that Studios is required to offer invoices and other documentary evidence to support the timing and other specific information of its alleged priority uses of the marks in question. Studios concedes that it has not offered any documentary evidence to support any of its alleged early uses of the marks in question. In this case, involving small companies without sophisticated record-keeping systems, the Court determines that mere witness testimony alone would be sufficient to establish Studios' first uses of the marks. Nonetheless, the testimony must be able to set forth a level of specificity sufficient to meet a party's burden of proving prior and continuous use.

[7]It is also not clear when each party began actually rendering its services via its web sites. The record shows that each party currently uses its web site to not just market its services but to actually render its services (*i.e.*, posting drafts of work product on the web site for clients to review). Such active use of a service mark on the Internet could conceivably constitute nation wide use. This analysis is similar to the issue of personal jurisdiction in the context of the Internet. *See Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000) (citing *Zippo Mfg. Co. v. Zippo Cot Com. Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)). Here, however, Studios has not established either that it was first to use the marks on the Internet or the nature of its web site when it first became operational. Therefore, Studios has not met its burden of proving prior use in any market because of its use of the marks on the Internet.

establish that it has engaged in more than *de minimis* activity within that market. *Natual Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1400 (3d Cir. 1985) ("When sales activity does not exceed even a minimum threshold level, a court may properly conclude that market penetration [] has not been established"). Under the facts of the *Natural Footwear* case, the Third Circuit found that *de minimis* activity meant either gross sales of over $5,000 or a total of over 50 customers in at least two or three years for which sales data was available. *Id.* While the Court recognizes that the amount of activity necessary to constitute market penetration will vary with the facts of the case, here, Studios has offered no evidence related to the type and amount of activity in any alleged markets. Without more, the Court cannot find that Studios had established priority rights in any markets.

Lastly, Studios has also failed to prove that it has continuously offered its services into those markets since the time of the first sales. While Studios still uses its "pure imagination studios" and "pureimagination.com" marks in redirecting customers to its new www.firewheeldesign.com web site, it has not presented any evidence that it still uses those marks in any specific markets in which Studios is contending priority rights. Indeed, Studios admits that it no longer uses those marks in conjunction with marketing its services in any way other than on the limited purpose web site. Because Studios prior rights would be subject to its geographic area of prior continuous use, its failure to prove any continuous use in any specific area is fatal to its section 1115(b)(5) defense.

Studios has therefore failed to meet its burden of establishing its defense under 15 U.S.C. § 1115(b)(5). The Court notes that it finds that Studios did adopt the "pure imagination studios" and "pureimagination.com" marks in good faith. While Studios otherwise failed to establish its

good faith prior user defense, the Court will take Studios' good faith adoption, into consideration in analyzing the question of equitable relief.

## II.    Cyberpiracy Claims

To prove its cyberpiracy claim, Pure Imagination must prove that (1) "pure imagination" is a distinctive or famous mark entitled to protection; (2) Studios' "pureimagination.com" domain name is "identical or confusingly similar to" Pure Imagination's mark; and (3) Studios registered the domain names with the bad faith intent to profit from them. 15 U.S.C. § 1125(d)(1)(A); *Shields v. Zuccarini*, 254 F.3d 476, 483 (3rd Cir. 2001). As discussed above, the first two elements are met because "pure imagination" is a distinctive mark and the "pureimagination.com" domain name is confusingly similar to Pure Imagination's mark. Pure Imagination's cyberpiracy claim, therefore, hinges on whether Studios registered the domain names with the bad faith intent to profit from them. As discussed above, the Court does not find that Studios has operated in bad faith in using the "pure imagination" marks, including registering the "pureimagination.com" domain name. The Lanham Act provides a safe harbor provision: bad faith "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125 (d)(1)(B)(i) and (ii). The Court finds the testimony of Josh Williams entirely credible and, therefore, finds that Studios believed and had reasonable grounds to believe that the use of the "www.pureimagination.com" domain name was lawful. The evidence supports that Studios at all times felt that it had prior rights to use the domain name. It was not aware of Pure Imagination at the time it adopted the domain name. Even after being made aware of Pure Imagination's use of the "pure imagination" mark, Josh Williams searched

the USPTO's web site and could not find Pure Imagination's alleged pending registration. Because Studios is covered by the safe harbor provision of § 1125(d)(1)(B)(ii), it is not liable for Cyberpiracy under the Lanham Act. *Hartog & Co. v. swix.com,* 136 F. Supp. 2d 531, 541-42 (E.D. Va. 2001).

Even if Studios did not believe under reasonable grounds that its use of the "pure imagination" mark was lawful, the factors provided by the Lanham Act do not support a finding of bad faith. Most notably, Studios had registered the mark in various states and felt that it had common law rights in the "pure imagination" mark, at least in certain markets. 15 U.S.C. § 1125(d)(1)(B)(i)(I). The domain name "www.pureimagination.com" consists of most of Studios legal name, Pure Imagination Studios, Inc., under which Studios is incorporated.[8] 15 U.S.C. § 1125(d)(1)(B)(i)(II). Studios used the domain name in connection with the bona fide offering of its web and icon design services. 15 U.S.C. § 1125(d)(1)(B)(i)(III). There is no evidence that the web site accessible under the domain name "www.pureimagination.com" could harm the goodwill represented by the mark, let alone any evidence of intent on the part of Studios to divert customers from Pure Imagination's web site. 15 U.S.C. § 1125(d)(1)(B)(i)(IV). Although Studios made various offers to essentially sell the domain name to Pure Imagination, at the time of these offers, Studios had used the domain name in the bona fide offering of its services. 15 U.S.C. § 1125(d)(1)(B)(i)(VI). There is no evidence that Studios has either provided misleading

---

[8]Studios rationale for only using "pure imagination" and not the full name "pure imagination studios, inc." in its domain name is also legitimate. Josh Williams testified that he was aware that domain names are most effective if they are limited to a certain number of syllables. Therefore, the use of "www.pureimagintion.com" was merely an effort to shorten the domain name that a potential customer would need to enter on a keyboard, rather than an effort to emulate Pure Imagination.

contact information or failed to maintain accurate contact information in connection with the registration of the domain name. 15 U.S.C. § 1125(d)(1)(B)(i)(VII). Also, there is no evidence that Studios has registered any marks that relate in any way to the trademark rights of others. 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). In sum, the factors provided by the Lanham Act do not support a finding of bad faith on the part of Studios.

The Lanham Act also provides that courts can look at other factors to assess whether a person acted with bad faith in connection with its registration of a domain name. Pure Imagination points to various conduct on the part of Studios that it alleges demonstrates that every time Pure Imagination made efforts to protect its trademark rights, Studios took steps to expand its use of the mark and acquire its own rights in the domain name. As discussed above, however, this Court finds that none of this conduct on the part of Studios exhibits bad faith. Studios reasonably believed that it had prior rights in the mark, it was not aware of Pure Imagination when it adopted the mark, and after it perceived Pure Imagination to be claiming that it had a pending registration, Studios searched for that pending registration but did not find it.

For these reasons, the Court does not find that Studios had a bad faith intent to profit from the "www.pureimagination.com" domain name as required by the Lanham Act. 15 U.S.C. § 1125(d)(1)(A)(i).

### III.    Pure Imagination's Other Claims

Also, "[c]laims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act," and thus claims under the Deceptive Trade Practices Act or 815 ILCS §510 are coterminous with Pure Imagination's Lanham Act claims. *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp 567, 579

30

(N.D. Ill. 1994) (citing *Gimix, Inc. v. JS & A Group, Inc.,* 669 F.2d 901, 908 (7th Cir. 1983)

(Illinois state law claims for unfair competition or deceptive trade practices are resolved

according to the principles set forth under the Lanham Act). To the extent Pure Imagination's

state law claims entitle Pure Imagination to any additional rights other than its rights under the

Lanham Act, Pure Imagination waived those rights by not submitting any law on the state law

claims in its pretrial order or making any argument on those claims at trial.

## IV.     Damages

### A.     Monetary Relief

As Pure Imagination conceded during its closing argument, there is no evidence of any

financial damages in this case. Therefore, Pure Imagination is not entitled to monetary relief.

Under 15 U.S.C. §1117(a), the "court in exceptional cases may award reasonable attorneys fees

to the prevailing party." The Court does not find this to be an exceptional case and no award of

attorneys' fees is appropriate. In particular, the Court finds no evidence of bad faith or

intentional misconduct on the part of Studios.

### B.     Injunctive Relief

As the Supreme Court has recognized, the Lanham Act provides that courts "shall have

power to grant injunctions, according to the principles of equity and upon such terms as the court

may deem reasonable. 15 U.S.C. § 1116; *Park 'N Fly,* 105 S.Ct. 658, 673. The Lanham Act also

requires that any remedy is subject to the principles of equity. *Id.* Courts have recognized that

the decision whether to grant a permanent injunction can be influenced by a general balancing of

the interests of the parties involved such as "the nature of the senior user's priority, the senior

user's delay in asserting its claim, and the harm to the junior user as compared to the benefit of

the senior user that would result from the requested injunction." *Franklin Resources, Inc. v. Franklin Credit Management Corp.*, 988 F. Supp. 322, 327 (citing *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 214 (2d Cir. 1985)). Although, "a showing of a likelihood of confusion alone will suffice to support a grant of injunctive relief." *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir. 1982).

In this case, the equities favor enjoining Studios from using the marks "www.pureimagination.com" or "pure imagination studios." Len Davis testified that Pure Imagination has held back from its marketing because it did not have the domain name "www.pureimagination.com." It has also provided evidence of actual confusion where customers seeking its web site have automatically entered "www.pureimagination.com" and end up at Studios' web site. On the other hand, Studios has already begun conducting business under its new name "Firewheel Design." While Studios will certainly be burdened by discontinuing use of the "pure imagination studios" and "pureimagination.com" marks, the fact that it has commenced transferring its good will to a new mark will mitigate this burden.

Courts have recognized that disclaimers, by themelves, do not sufficiently limit the harm to a trademark owner. *Int'l Kennel Club*, 846 F.2d at 1093 ("we are convinced that plaintiff's reputation and goodwill should not be rendered forever dependent on the effectiveness of fineprint disclaimers often ignored by customers"). Especially in the context of the Internet, disclaimers are often ineffective in preventing confusion. *Caterpillar Inc. v. Telescan Tech., L.L.C.*, No. Civ.A. 00-1111, 2002 WL 1301304, *4 (C.D. Ill. Feb. 13, 2002) (citing *Paccar v. Telescan*, 115 F. Supp. 2d 772, 778 (E.D. Mich. 2000) ("A disclaimer that purports to disavow association with the trademark owner after the customer has reached the site comes too late"));

*Ford Motor Co. v. Ford Financial Solutions, Inc.,* 103 F. Supp. 2d at 1128 ("Due to the nature of Internet use, [a] defendant's appropriation of [a] plaintiff's mark as a domain name and home page address cannot adequately be remedied by a disclaimer") (internal quotation omitted).

Although the Court finds that injunctive relief is appropriate, it declines to order Studios to transfer the "pureimagination.com" domain name to Pure Imagination. The Ninth Circuit has recognized that "only upon proving the rigorous elements of cyber-squatting under the ACPA have plaintiffs successfully forced the transfer of an infringing domain name." *Interstellar Starship Services, Ltd. v. Epix, Inc.,* 304 S.3d 936, 948 (9th Cir. 2002). As discussed, here, the Court does not find Studios liable for cyberpiracy under 15 U.S.C. § 1125(d).

A district court has broad discretion to fashion any remedy that alleviates the confusion. *Id.* In this case, the Court has not found any evidence of bad faith on the part of Studios. The record supports that each party is a relatively small company that is rapidly growing and independently adopted essentially the same name, "pure imagination" and "pure imagination studios." Moreover, because these companies rely primarily on the Internet, the domain names of these companies are significant to their ability to capitalize on their respective good will and to continue to grow.[9] While each party has demonstrated good faith, it is Pure Imagination that was the first to use the "pure imagination" mark and to federally register that mark. Therefore, it is Pure Imagination that should eventually be the sole company to use that mark in this field, as least as between Pure Imagination and Studios. Accordingly, the Court will permanently enjoin Studios from using either the "pure imagination studios" or the "pureimagination.com" domain

---

[9]Indeed courts have recognized a public interest in managing the Internet as a "resource that has the potential to benefit hundreds of millions of people." *See Minnesota Mining and Mfg. Co. v. Taylor,* 21 F. Supp. 2d 1003, 1005 (D. Minn. 1998).

name. Specifically, six months from the date of this Order, Studios will cease and desist from using the "pure imagination studios" or "pureimagination.com" marks, or any marks confusingly similar to the "pure imagination" mark. As of the date of this Order, Studios may not commence any new uses of the "pure imagination studios" or "pureimagination.com" marks, although Studios may use those marks to inform customers of its new name "Firewheel Design," and the associated web site www.firewheeldesign.com. Studios, may also continue to use those marks in directing potential customers to its "Firewheel Design" web site, as it does now. If Studios continues such use of the "pure imagination studios" or "pure imagination.com" marks, Studios must not only provide a disclaimer in reasonably sized font, but also provide a link to Pure Imagination's web site along with such disclaimer. Studios must reasonably identify this disclaimer and the link to Pure Imagination's web site so that customers seeking Pure Imagination can readily access Pure Imagination's web site.

## CONCLUSION

Studios' "pure imagination studios" and "pureimagination.com" marks infringe Pure Imagination's trademark rights under 15 U.S.C. § 1114(1) and § 1125(a). Studios failed to prove its prior user defense under 15 U.S.C. § 1115(b)(5). Studios did not act with bad faith and is not liable for cyberpiracy under 15 U.S.C. § 1125(d). No monetary relief is appropriate. This Court permanently enjoins Studios from using the "pure imagination studios" and "pureimagintion.com" marks effective May 13, 2005. Studios has six months from the date of this Order to continue using those marks to direct customers to its new business name. Studios must provide a link to Pure Imagination's web site on any web page that uses the "pure imagination studios" or "pureimagination.com" marks.

DATED: November 12, 2004           ENTERED


AMY J. ST. EVE
United States District Court Judge

35